133 So.2d 455 (1961)
MID-STATE INVESTMENT CORPORATION, Appellant,
v.
C.B. O'STEEN and Nell O'Steen, his wife, Appellees.
No. C-204.
District Court of Appeal of Florida. First District.
September 21, 1961.
Rehearing Denied October 20, 1961.
Harry M. Hobbs, Tampa, for appellant.
William D. Barfield, Jacksonville, for appellees.
CARROLL, DONALD K., Chief Judge.
The defendant has filed this appeal from a final judgment entered against it by the Civil Court of Record for Duval County, based upon a directed verdict on the issue of liability and a jury verdict on the issue of damages.
The evidence at the trial was rather nebulous as to the exact nature of the parties' transactions, but the following facts seem to be established by the evidence, and the trial court undoubtedly so construed the evidence in directing its verdict on the issue of liability: The plaintiffs, who are husband and wife, on April 4, 1958, purchased a house and paid for it with money which they borrowed from the defendant, an investment corporation. As a part of this loan transaction, the plaintiffs apparently assigned to the defendant their deed to the land and took back an unrecorded contract for deed, which was conditioned upon the monthly payment of $55.22 plus six per cent interest until the indebtedness of $3,312 was *456 paid. This contract contained the following provision:
"And in case of failure of the said parties of the second part to make either of the payments or any part thereof, or to perform any of the covenants on their part hereby made and entered into, this contract shall, at the option of the party of the first part, be forfeited and terminated, and the party of the second part shall forfeit all payments made by them on this contract; and such payments shall be retained by the said party of the first part in full satisfaction and liquidation of all damages by them sustained, and said party of the first part shall have the right to re-enter and take possession of the premises aforesaid without being liable to any action therefor."
These payments were due on the 15th day of each month beginning on May 15, 1958. The plaintiffs apparently seldom made these payments on time and were usually one or two months behind. For several months the defendant accepted these late payments, but on April 24, 1959, when the plaintiffs were two months behind in their payments, the defendant elected to repossess the house in accordance with the above-quoted provision of the contract. One more payment of $55.20 was tendered by the plaintiffs and accepted by the defendant on April 28, 1959, four days after the repossession. In February of 1959 the plaintiffs had left Jacksonville and moved to Apopka, Florida, where the plaintiff husband had secured employment. They had closed their house in Jacksonville and left their furniture, two washing machines, some tools and clothes, and other personal belongings locked inside the house. They were in Apopka on April 28, 1959, when they received a telegram from the defendant advising that their house had been repossessed.
On April 24, 1959, one West, an agent of the defendant, went to the plaintiffs' house, entered it through a window, and took possession of the premises, both the realty and the mentioned personalty. Most of the furniture and one of the washing machines were subject to a purchase money mortgage executed by the plaintiffs to a certain local store. West called the store and asked that it send its representatives to pick up the property on which it had a claim, which they did. Some of the tools were given by the defendant to a next-door neighbor to hold for the plaintiffs in case they should return, and the rest of the plaintiffs' personal effects were lost, except for a box of rags and the second washing machine, which were left in the house. The defendant almost immediately sold the house to the half-brother of the next-door neighbor.
The plaintiffs filed this action against the defendant, seeking damages for the trespass to their real property and for the conversion of their personal property. The defendant answered by denying liability and affirmatively alleging that it had legally taken possession of the property under the above-quoted provision of the contract. This affirmative defense was stricken by the trial court upon a motion by the plaintiffs. At the close of the evidence the trial court directed a verdict for the plaintiffs on the issue of liability and submitted the issue of damages to the jury. The jury returned a verdict of $2,750 for the plaintiffs. After the defendant's motion for a new trial was denied by the trial court, this appeal followed
The defendant-appellant raises several points on this appeal, but its main argument seems to revolve around the question of the validity of the above-quoted repossession provision in the contract.
We think, and we hold, that the contract involved in this appeal falls within the ken of the provisions of Section 697.01, Florida Statutes, F.S.A., which reads in pertinent part:
"697.01 Instruments deemed mortgages
"All conveyances, obligations conditioned or defeasible, bills of sale or other *457 instruments of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money, whether such instrument be from the debtor to the creditor or from the debtor to some third person in trust for the creditor, shall be deemed and held mortgages, and shall be subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages."
In our opinion the contract before us was clearly intended to secure the payment of money and must be deemed and held to be a mortgage, subject to the same rules of foreclosure and to the same regulations, restraints, and forms as are prescribed in relation to mortgages, to use the words of the statute. This being so, the defendant had only a naked legal title as security for the indebtedness, had no legal right to repossess the real or personal property, and had no such right to trespass upon the real property or exercise dominion over the personal property. The courts of this state have many times applied the principle of the quoted statute to instruments of writing in circumstances analogous to those on this appeal. For examples see Cary & Co. v. Hyer, 1926, 91 Fla. 322, 107 So. 684, Miami Bond & Mtg. Co. v. Bell, 1931, 101 Fla. 1291, 133 So. 547, and Hull v. Maryland Cas. Co., Fla. 1955, 79 So.2d 517.
In the state of the evidence at the close of the trial, which evidence we think permitted no reasonable inference other than that the defendant was liable in trespass and conversion as charged, the trial court correctly directed the verdict against the defendant on the issue of liability and properly submitted the question of damages to the jury.
Up to this point the trial court ruled in this case with eminent correctness, but we think the court erred in one of its charges to the jury as to the admeasurement of damages in an action of trespass, the giving of which charge is assigned as error by the appellant here. This charge is as follows:
"Now, the damages to be assessed, however, is a matter strictly up to you gentlemen as members of the jury what damages to be assessed for that trespass, that taking over of the real property without authority of law and I give you the measure of damages now.
"You gentlemen must decide from the evidence before you what dollar amount to translate that into. The measure of damages for trespass, gentlemen, as I understand the law, is the cash value of the interest of the Plaintiffs in that real property at the time of the trespass with legal interest from that time to the date of the trial. Now, that is the first element of damages. We will get to the conversion in just a moment, but so far as the trespass, the invasion of the Plaintiff's property by the Defendant, that is the measure, the cash value of the interest of the Plaintiffs in the property at the time of the trespass with legal interest; that is, interest at the rate 6% per year on that amount from that time of the trespass up today [sic]."
In their briefs all parties seemingly agree, and we hold that the general rule established in Florida, ordinarily applicable in an action of trespass to real property, is that the correct measure of damages is the difference in value of the property trespassed upon before and after the trespass is committed. Gasque v. Ball, 1913, 65 Fla. 383, 62 So. 215. See also 9 Fla.Jur., Damages, Sec. 64, page 404 and 31 Fla.Jur., Trespass, Section 14, page 202.
The appellees contend, however, and the trial court apparently considered, that this general rule "contemplates a situation in which there is only a temporary breaking *458 of the close, and the injured owner or possessor remains in possession of the premises" and that "the loss to the plaintiffs herein was the value of their interest in the land, as they were permanently deprived of the possession and ownership thereof." The appellees also cite authorities concerning the measure of damages when a trespass results in an ouster and when the result of a single act is an injury the effects of which will continue indefinitely.
In our opinion, however, the facts disclosed on this record do not bring the trespass here within any of the exceptions to the general rule as stated. The plaintiffs have not been deprived permanently of their possession or ownership of the land. They have not been ousted, nor will the effects of the trespass continue indefinitely. As we held earlier in this opinion, the defendant had nothing more than a mortgage lien when it sought to repossess. The defendant's clear equitable remedy was a foreclosure of this lien. Its deed of the land to the neighbor's brother-in-law was obviously a nudum pactum and passed no title to the land. Under these circumstances there could be no legal ouster of the plaintiffs.
Another consideration militates against the recognition of the measurement of damages set forth in the challenged charge that is, "the cash value of the interest of the Plaintiffs in the property at the time of the trespass with legal interest. * * *" If the defendant-appellant should later decide to file a suit to foreclose its mortgage lien and the proceeds at the foreclosure sale should exceed the amount needed to satisfy its lien, such excess, under applicable principles of equity, would be paid to the plaintiffs-appellees for their equity of redemption  which equity of redemption would probably be tantamount to "the cash value of the interest of the Plaintiffs in the property" mentioned in the challenged charge. Such a consequence, resulting in double payment for the same interest of the Plaintiffs, would obviously be contrary to equity.
Because we hold that the trial court erred in giving the charge in question on the vital issue of the measurement of damages, the final judgment appealed from must be, and it is reversed, and the cause is remanded for a new trial.
Reversed and remanded with direction.
STURGIS and WIGGINTON, JJ., concur.