94 N.J. Super. 189 (1967)
227 A.2d 519
IN THE MATTER OF THE ESTATE OF FRANK SILVERMAN, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued February 27, 1967.
Decided March 13, 1967.
*191 Before Judges SULLIVAN, KOLOVSKY and CARTON.
Mr. David A. Weinstein argued the cause for appellant and cross-respondent Nathan Silverman (Mr. Irving Keith, attorney).
Mr. Solomon Lautman argued the cause for respondent and cross-appellant Hannah Silverman, administratrix of the estate of Frank Silverman, deceased (Messrs. Patterson, Cooper & Coleman, attorneys).
The opinion of the court was delivered by KOLOVSKY, J.A.D.
In addition to the dispute as to the allowance of counsel fees hereinafter noted, these consolidated appeals involve the challenge by decedent's brother, plaintiff Nathan Silverman (Nathan), of the trial court's ruling sustaining *192 the validity of the marriage of Frank Silverman (Frank) and Hannah G. Silverman (Hannah) and denying the relief sought by the first count of Nathan's complaint, the removal of Hannah as administratrix of the decedent's estate.
Nathan does not appeal from the trial court's adverse determinations on the second and third counts of his complaint seeking respectively the establishment of an alleged lost will of decedent and the enforcement of a trust agreement purportedly entered into between Nathan as beneficiary and the decedent Frank as trustee.
Nathan contends that the marriage was invalid by reason of the provisions of L. 1939, c. 227, now N.J.S.A. 37:1-10, which abolished common law marriages as of December 31, 1939 and provided that no marriage contracted on and after that date
"* * * shall be valid unless the contracting parties shall have obtained a marriage license as required by section 37:1-2 of this Title, and unless, also, the marriage, after license duly issued therefor, shall have been performed by or before any person, religious society, institution or organization authorized by section 37:1-13 of this Title to solemnize marriages; and failure in any case to comply with both prerequisites aforesaid, which shall always be construed as mandatory and not merely directory, shall render the purported marriage absolutely void."
It is undisputed that Hannah and Frank obtained a license as directed by R.S. 37:1-2; the license was issued on January 2, 1963 by the licensing officer of the City of Long Branch. It is also undisputed that Hannah and Frank were married on January 5, 1963 by a person authorized by N.J.S.A. 37:1-13 to solemnize marriages, the mayor of Deal.
Nathan contends, however, that despite this literal compliance with the requirements of R.S. 37:1-2 and N.J.S.A. 37:1-13, the marriage is invalid under N.J.S.A. 37:1-10 because the license was obtained in Long Branch on the basis of application signed by Frank and Hannah reciting that she was a resident of Long Branch whereas in fact she resided in Wall Township. Nathan argues that as a result, the license *193 was not a license "duly issued" as called for by N.J.S.A. 37:1-10 since R.S. 37:1-3 provides:
"The licensing officer shall issue the license which shall be obtained:
a. In the municipality of this state in which the female party to the proposed marriage resides; or
b. In the municipality in which the male party resides, if the female party is a nonresident of this state; or
c. In the municipality in which the proposed marriage is to be performed, if both parties are nonresidents of this state,"
and therefore the license should have been obtained in Wall Township.
We affirm the trial court's ruling sustaining the validity of the marriage.
Preliminarily, we note that since the misrepresentation as to the prospective bride's residence did not relate to a fact affecting the legality of the proposed marriage, cf. Dacunzo v. Edgye, 19 N.J. 443 (1955); see Thompson v. Monteiro, 58 N.J. Super. 302 (Ch. Div. 1959), the license issued by the licensing officer of Long Branch may not be collaterally attacked in these proceedings. Cf. Marathon Bus Line v. State Board of Public Utility Com'rs, etc., 8 N.J. Misc. 379, 150 A. 224 (Sup. Ct. 1930); Ironbound Transp. Co. v. Board of Public Utility Com'rs, 8 N.J. Misc. 896, 152 A. 325 (Sup. Ct. 1930).
More significantly, N.J.S.A. 37:1-10 does not evidence a legislative intent that a misrepresentation of the prospective bride's residence in the application for a license should have the drastic effect of voiding a marriage which is otherwise valid. It is the general rule that the fact of such misrepresentation and the fact that the license was obtained in the wrong municipality does not nullify the marriage solemnized under it unless a statute specifically so provides. Annotation, 61 A.L.R.2d 858, 862; 55 C.J.S. Marriage § 25.
Nor is such a result called for to accomplish the purposes and objectives of the 1939 act (L. 1939, c. 227, now N.J.S.A. 37:1-10) which abolished common law marriages. As *194 appears from the statement attached to the bill (Assembly No. 10) which was enacted as chapter 227 of the Laws of 1939, "the purposes of this bill [were] two-fold." First, it would insure that there would be no evasion of the then recently enacted statute (L. 1938, c. 126; N.J.S.A. 37:1-20, et seq.) requiring blood tests of persons intending to marry and the filing with the application for a marriage license of a certificate showing that the applicants are not infected with syphilis. Second, it would eliminate "the many abuses arising from common law marriages and the countless claims of marital relations under this loose form of matrimony" and make "possible the maintenance of proper records, desirable from the State's standpoint as well as from either spouse's."
Neither purpose  the prevention of marriage of syphilitics or insuring public records of marriage  is defeated or affected by a misrepresentation as to residence or the obtaining of a marriage license in the wrong municipality. Irrespective of where in this State the license is obtained, the requisite medical certificate must accompany the application; the marriage license (N.J.S.A. 37:1-7) and the certificate of marriage (R.S. 37:1-17) on the reverse side thereof must be written on blank forms prepared by the State Department of Health and supplied by it to the local licensing officers (N.J.S.A. 26:8-47); and once the marriage is performed, the certificate of marriage and marriage license are to be transmitted to the ultimate repository, the State Registrar of Vital Statistics (N.J.S.A. 26:8-43), who is required to index them alphabetically and record them (N.J.S.A. 26:8-44).
The only other issues presented here involve the trial court's allowance to Nathan's counsel of a fee of $1,250 and $35 costs to be paid out of the estate. The administratrix appeals, contending that no counsel fees should have been awarded to Nathan; he cross-appeals, asserting that the allowance was inadequate and that the court erred in ruling that counsel fees may be awarded him only as to the first count of the complaint.
*195 R.R. 4:55-7(b) does not authorize an allowance to Nathan of counsel fees out of the estate for services rendered in prosecuting the third count of the complaint, a suit by plaintiff to advance his own interest as beneficiary of an alleged trust. Sunset Beach Amusement Corp. v. Belk, 33 N.J. 162, 169 (1960).
The power to make an allowance out of the estate does exist with respect to an action seeking to establish a lost will such as is pleaded in the second count, since if plaintiff were successful, the services of his attorneys would redound to the benefit of others in addition to plaintiff, those named as beneficiaries in the will. Sunset Beach Amusement Corp. v. Belk, supra, at p. 168; 7 N.J. Practice (Clapp, Wills & Administration) (3d ed. 1962), § 1545; cf. R.R. 4:55-7(e). However, in view of the trial court's opinion indicating an obvious lack of merit in the second count, an allowance of counsel fees for services rendered with respect thereto would not be warranted. Cf. Ferguson v. Rippel, 23 N.J. Super. 132, 142 (App. Div. 1952); In re Lenart's Estate, 125 N.J. Eq. 129 (E. & A. 1939).
The trial court had the power to make an allowance for services rendered by Nathan's counsel with respect to the first count. We find no abuse of discretion in the court's decision as to the amount to be allowed.
The judgment is affirmed.