409 So.2d 114 (1982)
CAIN & BULTMAN, INC., a Florida Corporation, Appellant,
v.
MISS SAM, INC., a Florida Corporation, Thomas A. Miller and Marie J. Miller, His Wife, and Florida Carpet Corporation, Appellees.
No. 81-124.
District Court of Appeal of Florida, Fifth District.
January 27, 1982.
*116 S. Gordon Blalock of Blalock, Holbrook & Akel, P.A., Jacksonville, for appellant.
Clark A. Stillwell of Tucker, Hicks, Blanchard, Brannen & Stillwell, P.A., Inverness, for appellee Miss Sam, Inc.
No appearance for appellees Thomas A. Miller and Marie J. Miller and Florida Carpet Corp.
COWART, Judge.
This case involves: the effect of the recording statute and of a notice of lis pendens; the nature of an agreement for deed (or land contract); and the property rights of parties claiming under an agreement for deed and two mortgages relating to real property in Citrus County, Florida.
Thomas A. Miller and Marie J. Miller (the Millers), acquired land in 1972 and in 1974 mortgaged a part of it and a mobile home to Citizens First National Bank to secure an indebtedness of $20,000. This first mortgage was promptly and properly recorded.
In 1976 the Millers, as sellers, executed an "Agreement for Deed" with Frank G. Ackley and Janet B. Ackley (the Ackleys), as buyers, in which the buyers agreed to pay to the sellers various incremental sums of money and the sellers agreed that, upon payment of said sums in full, the sellers would execute and deliver to the buyers a warranty deed to certain personalty and two tracts of land, the first being a 13.54 acre tract which included the property mortgaged to the Citizens Bank. In this agreement the sellers agreed to make all payments on the first mortgage as due and to have that mortgage satisfied of record when the buyers were entitled to receive their warranty deed. This agreement provided that if the buyers defaulted in payment, the sellers had the right to "terminate this agreement," in which event the buyers agreed they would surrender possession and the sellers could retain all sums paid as liquidated damages and as reasonable rental for the use of the property. This agreement was not recorded but, claiming under it, the Ackleys took actual possession of the property.
Thereafter, the Millers filed suit against the Ackleys to foreclose the agreement for deed for default in payment and filed a notice of lis pendens on July 13, 1977. On February 13, 1978 (while the Miller-Ackley foreclosure suit was pending), the Millers *117 executed to appellant Cain & Bultman, Inc., a mortgage on the 13.54 acre tract to secure a note for $50,000. This mortgage was not recorded in Citrus County until December 13, 1978. On February 7, 1979 (again while the Miller-Ackley foreclosure suit was still pending), appellant filed suit against the Millers to foreclose its mortgage; this suit proceeded to final judgment and on October 10, 1979, appellant bought the 13.54 acre tract of land at the resulting clerk's sale.
In the meantime, by an instrument captioned and filed in the pending Miller-Ackley foreclosure suit, the Ackleys sold, assigned and transferred to appellee Miss Sam, Inc., "all of their right, title and interest in and to the above captioned case." Miss Sam was then substituted as party defendant for the Ackleys. The Millers and Miss Sam stipulated a settlement under which the Millers agreed to transfer all of their interest in the property to Miss Sam in consideration of Miss Sam releasing all claims against the Millers under the agreement for deed and all claims under the Ackleys' counterclaim for rescission and damages. The trial court in the Miller-Ackley foreclosure suit approved that settlement stipulation, ordered the Millers to perform by conveying the property to Miss Sam within twenty days and provided that upon Millers' failure to timely make such conveyance the order would act as such conveyance.[1] Miss Sam then acquired the Citizens First National Bank first mortgage, and the indebtedness it secured. Next Miss Sam brought an action against the Millers and Cain & Bultman in two counts: the first count to foreclose the Citizens First National first mortgage and the second count to quiet title to the 13.54 acre tract and the second parcel described in the Miller-Ackley agreement. The trial court by summary judgment quieted the title to said property in Miss Sam, whereupon Miss Sam voluntarily dismissed the mortgage foreclosure count. Cain & Bultman filed this appeal challenging the correctness of the judgment quieting title in Miss Sam.
The questions involved are: what are the rights of the two contending parties (the appellant Cain & Bultman and the appellee Miss Sam) in and to this property, whose rights are superior and what is the effect of that superiority.
The first question is the one of priority. Normally, competing interests in land have priority in order of their creation in point of time. An interest created first has superiority over an interest created later from the same source, provided that notice of the first created rights are available to those later acquiring rights in the same land. Under our recording statute, section 695.01, Florida Statutes (1979), this notice may come from parties in possession of the property, from actual notice or from constructive notice of matters recorded in the public records. In the answer filed September 16, 1977, in the Miller-Ackley foreclosure action, the Ackleys alleged that they had vacated the property in question on or about August 1, 1977. After this date, no notice of their rights could be imputed from possession. This really does not matter in this case because, under section 48.23(2), Florida Statutes, the lis pendens filed July 13, 1977 in the Miller-Ackley foreclosure action was effectual until July 14, 1978, but not thereafter, to give constructive notice of the matters involved in that action.
This prompts Cain & Bultman to argue that it was not charged with constructive notice of the Ackleys' rights involved in the action to foreclose the agreement for deed because Cain & Bultman did not record its mortgage from the Millers in Citrus County, Florida, until December 13, 1978. The answer to this contention is that for notice to those who later acquire an interest in real property to be meaningful, such notice must be available at the time the subsequent interest is acquired. Cain & Bultman acquired its mortgage interest on February 13, 1978, which was during the one year (July 13, 1977 to July 14, 1978) that the lis pendens in the Miller-Ackley *118 foreclosure suit was effectual to give notice of Ackley's rights under the agreement for deed. Since Cain & Bultman acquired its mortgage interest with legal (constructive) notice of the Miller-Ackley agreement for deed, its mortgage interest is inferior to the rights of the Ackleys and their successors in interest. The recording of Cain & Bultman's mortgage in Citrus County, Florida, on December 13, 1978, was effective only to give notice of its mortgage to persons acquiring an interest in the property after the recording of that mortgage (more on this later) and had nothing to do with Cain & Bultman's notice of Ackleys' contract rights. Accordingly, Cain & Bultman acquired its mortgage lien interest with at least legal constructive notice of the Citizens First National Bank recorded first mortgage and of the Miller-Ackley agreement for deed; therefore, Cain & Bultman's mortgage lien interest in its hands[2] was, and is, inferior to the rights of the original holders of those instruments and of their successors in interest thereunder.
The next question is what are the rights of the parties in and to this property. The answer to this question requires a consideration of the nature of the rights involved. Originally, the Millers owned the unencumbered title in fee simple absolute  the whole title recognized in law and in equity. They first gave Citizens First National Bank a lien against their whole legal-equitable interest in part of the land in question to secure an indebtedness. The effect of this mortgage is that the Millers agreed that, if repayment of the promissory note was made, the lien of the mortgage would be cancelled but, if not, the holder of the mortgage had the right to look to the property as security and to collect the debt, if necessary, by a foreclosure proceeding in equity. In foreclosure, the unpaid amount of the debt is determined and the owner is given one last opportunity to "redeem" his property by payment of all sums due, failing which the property is sold at public sale conducted under court authority and the proceeds of the sale are applied to pay or reduce the unpaid balance on the debt, with any surplus available to those having inferior rights in the mortgaged property.
In the usual sale of land where the purchaser does not pay the purchase price in full, the seller conveys by deed the legal title (which includes the unsevered equitable title) to the purchaser, who then executes a note and mortgage back to the seller to secure the unpaid portion of the purchase price. Under this arrangement, the purchaser first acquires the whole legal and equitable title subject to losing it by foreclosure if the secured portion of the purchase price is not paid. The seller passes the legal-equitable title and acquires a purchase money mortgage lien against the property with substantially the same rights as a lender whose mortgage merely secures a loan.
Another, less common method of effecting a time payment sale of land is by an agreement for deed, sometimes called a contract for deed, an installment sales contract, a land contract and sometimes even a retained title or conditional sale contract. The Miller-Ackley Agreement for Deed is such a legal instrument. It is an executory contract for the sale of land in which the buyer agrees to pay the purchase price, usually in a series of payments over a long period of time. The buyer is usually given possession of the land and the seller agrees that when the purchase price has been paid in full the seller will then convey the legal title to the buyer, usually by warranty deed.[3]
*119 A maxim of equity is to the effect that equity treats that as being done which should be done. This is sometimes called the doctrine of equitable conversion.[4] Since parties should do that which they have contracted to do, equity applies this maxim to assume that the payment agreed to be made will be made and that the title which is to be delivered has already passed. Therefore, in real property law theory, upon execution of such a contract the purchaser is considered to thereby acquire the equitable title to the property. This means that, while the purchaser does not have the legal title, he has a title which will be recognized for many purposes in a court of equity. An equitable title is not a lien nor is it the same as holding a legal title subject to a mortgage lien. It is somewhat similar to these property rights, but it is not the same thing as either. Under a land contract the seller continues to hold the legal title but in trust for the purchaser and subject to the contractual duty to convey it to the purchaser at the completion of the time payments. Conversely, the purchaser holds a contractual right under which, if the purchase price is paid and the seller fails to voluntarily convey the legal title, the purchaser is entitled to apply to a court of equity to specifically enforce the contract and to have the court require the seller, or his successors in interest with notice, to convey the legal title to the buyer. In the event the purchaser defaults in payment and the seller desires an adjudication of termination of the buyer's rights, this can be done in an action in equity. We perceive, however, that the seller may proceed in equity in any of several ways to accomplish this: by an action in equity in the nature of a traditional mortgage foreclosure suit; by an action in equity in the nature of a traditional quiet title suit; or by a suit for declaratory decree in which the seller alleges the agreement for deed and the facts believed or claimed to justify a termination of the contract purchaser's rights in equity (usually nonpayment of the purchase price), and the unfulfilled contract is adjudicated to have become merely a cloud on the seller's legal title and is removed. In these latter types of actions the equity court can adequately protect the equitable rights of the purchaser as a condition of equitable relief just as easily as in a foreclosure action modeled after an action to foreclose a mortgage lien against the legal title. This protection should include giving the purchaser a last opportunity to redeem his rights to a conveyance of the legal title to the property by payment of all sums due. This constitutes an equity of redemption in the contract purchaser similar to the equity of redemption in the titleholder of land which is subject to a mortgage lien.
In Mid-State Investment Corp. v. O'Steen, 133 So.2d 455 (Fla. 1st DCA), cert. denied, 136 So.2d 349 (Fla. 1961), the plaintiffs "assigned to the defendant their deed to the land and took back an unrecorded contract for deed."[5] Thereafter the plaintiffs defaulted in payment and moved out of possession of the property. Apparently the defendant read the forfeiture provision *120 in the contract,[6] believed it meant what it said, took possession of the property and sold it "to the half-brother of the next-door neighbor." O'Steen, Id. at 456. The plaintiffs then sued the defendants for damages for trespass. The trial court directed a verdict against the defendants. On appeal the First District Court on Appeal affirmed, holding that the forfeiture clause was ineffective because the arrangement constituted a security device, that the contract constituted a mortgage within the meaning of section 697.01, Florida Statutes, and that the defendant had no legal right to repossess the property or to trespass on it and was responsible in damages for having done so and that the defendant's remedy was an equitable foreclosure of its lien. We have no quarrel with these holdings under the facts of that case because it appears that the defendant was not a bona fide seller and the whole arrangement was a mere device to secure a loan of money. However, the court in O'Steen went further to state that the defendant's "deed of the land to the neighbor's brother-in-law [sic] was obviously a nudum pactum and passed no title to the land." Id. at 458. That statement was unnecessary to the holding in that case, was therefore obiter dictum and is essentially erroneous.
In a particular instance, as perhaps in O'Steen, where the legal title is transferred to a creditor who enters into an agreement for deed with a debtor as purchaser, and the whole arrangement is but a device to secure a loan, the deed and agreement for deed together constitute a mortgage within the purview of section 697.01, Florida Statutes (1981). However, every agreement for deed is not a mortgage. Most times, as in this case, the agreement for deed is just what it appears to be: a true good faith time sales agreement, the primary function of which is to state the terms of a binding agreement to transfer the legal title to certain real property. In such an instance, apart from securing the seller's right to receive payment,[7] the agreement also secures the purchaser's right to receive the legal title upon payment in full. The seller continues to hold the legal title subject to the purchaser's equitable title and contract rights and the seller, in effect, has a lien against the purchaser's equitable title. When this is the true nature of an agreement for deed, there is nothing illegal, immoral or inequitable about the arrangement and under constitutional freedoms, citizens should be able to so contract and the rights and relationships between the parties should be as provided in the agreement, with, of course, the one notable qualification that contract provisions relating to forfeiture and self-help possession (or "repossession") violate public policy and are not enforced or recognized as valid as such in law or in equity.
The usual agreement for deed separates the equitable title from the legal title to the land and transfers it to the purchaser and entitles the purchaser, upon performance, to a conveyance of the legal title from the seller. It is an incident of this contractual right that the purchaser has an equity of redemption, which by statute is subject to levy.[8] However, it is not inconsistent with the contract purchaser's equitable rights (including the right of redemption) to recognize that the legal title held by the seller after the execution of such an agreement for deed can be conveyed, devised, encumbered or levied on by creditors.[9]
*121 Accordingly, we hold, contrary to the dictum in O'Steen, that the legal titleholder can convey or encumber his remaining interest in and to the property subject to his purchaser's rights under the contract. Consequently, the mortgage from the Millers to Cain & Bultman was valid and effective to encumber the Millers' then interest in the property, which was itself subject to the recorded first mortgage to Citizens Bank and to the contract rights of the Ackleys. The recording of Cain & Bultman's mortgage on December 13, 1978, put subsequent lenders, purchasers and creditors on constructive notice of its mortgage rights; this included Miss Sam, when on January 5, 1979, Miss Sam took an assignment[10] of the Ackleys' rights.
Even assuming that Miss Sam succeeded to the Ackleys' rights, those rights were only entitlement to a conveyance of the land upon payment of the balance due to the Millers. Further, Miss Sam was put on constructive notice of Cain & Bultman's lien rights under its recorded mortgage and also on constructive notice that Cain & Bultman had succeeded to the Millers' legal title by virtue of the Cain & Bultman-Miller foreclosure suit and the resulting clerk's certificate of title to Cain & Bultman as of October 10, 1979, when on October 19 or 25, 1979, Miss Sam (as assignee of the Ackleys) and the Millers attempted to stipulate a settlement in the Miller-Ackley foreclosure suit and to cause a transfer of the Millers' rights in said property to Miss Sam. Therefore, as against Cain & Bultman, both the transfer of the Millers' interest to Miss Sam and the circuit court order of November 2, 1979, approving and effectuating that transfer, are ineffective to accomplish that transfer. If the assignment from the Ackleys to Miss Sam and the settlement conveyance from the Millers to Miss Sam had both been effective, the result would have been that the legal and equitable title would have merged in Miss Sam and the judgment below confirming title in Miss Sam would have been correct. However, this did not occur; Millers' former legal title is in Cain & Bultman and the Ackleys' equitable title, whether in them or in Miss Sam has never been properly terminated by an equity court and apparently is outstanding and good as against Cain & Bultman's title to the property in question. This means that in any equitable proceedings to resolve the rights of those succeeding to the interests of the original parties to the agreement for deed, those parties would be entitled to an accounting. Also, in this particular case, anyone succeeding to the Ackleys' equitable title under the agreement for deed, subject to all other equitable considerations, would be entitled to exercise an equity of redemption by paying to Cain & Bultman, as successor to the Millers, all sums due to the original contract sellers under the agreement for deed, less, of course, the balance due on the Citizens Bank mortgage which the original contract sellers (the Millers) agreed to pay.
In summary, Cain & Bultman holds the legal title to the property described in the clerk's certificate of title dated October 10, 1979, subject to the unpaid balance due on the first mortgage originally given to Citizens First and now held by Miss Sam (as to *122 that portion of the 13.54 acre tract that is included in said mortgage). This legal title is also subject to the rights of the Ackleys or their successors in interest to receive a conveyance upon payment to Cain & Bultman of all sums due and unpaid under the Miller-Ackley agreement for deed. As to the second parcel included in the Miller-Ackley agreement but not included in Cain & Bultman's mortgage, Cain & Bultman has no interest and this appeal has no effect on the judgment below.
As to the 13.54 acre tract, the judgment below is reversed and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion. If the parties or either of them desire to resolve their rights in this proceeding at this time both should be permitted to replead as necessary to resolve any and all matters between them relating to the property in question, including the right to accountings as to sums due under the first mortgage and under the Miller-Ackley agreement.
REVERSED AND REMANDED.
DAUKSCH, C.J., and SHARP, J., concur.
NOTES
[1] See Fla.R.Civ.P. 1.570(d).
[2] This is worded in this manner because, if, after July 14, 1978 (the last date the lis pendens in the Miller-Ackley foreclosure was effective to give constructive notice), appellant had negotiated its mortgage to a purchaser for value who did not have actual knowledge of the Miller-Ackley agreement for deed, then the Miller-Cain & Bultman mortgage might have become, in the hands of such good faith purchaser, superior to the rights of the Ackleys or their successors under the Miller-Ackley agreement for deed.
[3] For a discussion of the practical aspects of agreements for deeds, see The Florida Bar, 1 Florida Real Property Practice, §§ 17.59-17.60 (1965). The theoretical aspects are considered in 8A Thompson on Real Property § 4442, at 253 (1963).
[4] See 8A Thompson on Real Property § 4447, at 273 (1963).
[5] The court in O'Steen acknowledges that the "evidence at the trial was rather nebulous as to the exact nature of the parties' transaction." It certainly must have been, because in real property law practice there is no such thing as assigning a deed. A deed is merely an instrument formally evidencing the transfer of an intangible title interest in and to land and when delivered it fulfills its purpose and is exhausted and remains only as evidence of the transfer that occurred. After one has acquired title by deed or otherwise, that title is transferred by another deed or by will or otherwise, but the prior deed is not assigned. Perhaps in O'Steen there was a prior contract for deed in which the plaintiffs were purchasers and they assigned their rights under the prior contract (their rights to receive a deed) to the defendant corporation which paid the prior seller, took legal title by deed from the prior seller then made a new contract for deed with the plaintiffs who were again portrayed as purchasers under contract (P.U.C.).
[6] Apparently a provision quite usual and one similar to that contained in the Miller-Ackley agreement for deed.
[7] The tax aspects of the vendor's security (lien) rights are considered in Jasper v. Orange Lake Homes Inc., 151 So.2d 331 (Fla.2d DCA), cert. denied, 155 So.2d 694 (Fla. 1963).
[8] Hoffman v. Semet, 316 So.2d 649 (Fla. 4th DCA 1975).
[9] Latin-American Bank v. Rogers, 87 Fla. 147, 99 So. 546, 547 (1924), holds that the interest of a titleholder who has entered into an agreement for deed is subject to levy under execution on a judgment. Of course, anyone acquiring rights from the seller with notice of the rights of a contract vendee (a purchaser under contract) takes subject to those rights and acquires only the rights of the contract seller. The contract seller, although the titleholder, usually has only the right to receive the balance of the purchase price. Therefore after the purchase price has been paid in full but before a conveyance of the legal title to the contract vendee pursuant to the contract, the contract seller effectually has no interest subject to levy. See Michaels v. Albert Pick & Co., 158 Fla. 877, 30 So.2d 498 (1947). Hull v. Maryland Cas. Co., 79 So.2d 517 (Fla. 1954) is explained because the judgment creditor of the titleholder had notice of the rights of the purchaser under an agreement for deed with the titleholder, not because the doctrine of equitable conversion so completely divested the titleholder of any rights in the land that he no longer had an interest subject to levy. There is language in Hull that infers to the contrary and that misleadingly broad language is unfortunately repeated in J.C. Penney Co., Inc. v. Koff, 345 So.2d 732 (Fla. 4th DCA 1977).
[10] We note that this assignment was captioned in the Miller-Ackley foreclosure action and was of all of the Ackleys' "right, title and interest in and to the above caption case." There is a substantial question as to the sufficiency of this language to assign the Ackleys' rights under the agreement for deed and to convey their equitable title to Miss Sam, Inc. We also note the champertous nature of this assignment.