511 So.2d 1080 (1987)
Terrence J. PURCELL and Doris S. Purcell, et Ux., Appellants,
v.
Stephen C. WILLIAMS, Philip A. Williams, and the Estate of Marequita D. Williams, Deceased, Appellees.
No. BR-480.
District Court of Appeal of Florida, First District.
August 26, 1987.
*1081 Bonnie K. Roberts, Bonifay, for appellants.
No appearance for appellees.
ZEHMER, Judge.
Terrence J. Purcell and Doris S. Purcell appeal the trial court's final order granting cancellation of a sales contract but denying all their requested monetary relief. We reverse.
In January 1986 the Purcells made a written agreement to sell real property located in Washington County to Marequita D. Williams. The agreement, a printed form contract with numerous typewritten changes, provided for a total purchase price of $35,000 and required that upon execution of the agreement Williams deposit $2,000. Williams was also to pay $8,000 cash on the date of closing, which was defined in the typewritten special clauses altering paragraphs 1 and 2 of the printed form as follows: "It is understood that closing will take place one year from date of contract, and that Seller will initiate the steps necessary to closing 45 days prior to closing date." The typewritten special clauses added to paragraph 10 of the contract further provided:
Buyer accepts responsibility for the dwelling upon occupancy, and agrees to pay full hazard insurance on the dwelling as of the date of contract, to the amount still owing to the Seller, showing Seller as beneficiary payee in accordance with his interest in same.
IT IS UNDERSTOOD THAT BUYER IS PURCHASING THIS PROPERTY IN "AS IS" CONDITION. Buyer agrees to have the limbs of cedar tree removed from the roof on the west side of the house, at no cost to the Seller.
UPON ACCEPTANCE OF THIS OFFER TO PURCHASE, Buyer shall have the right to occupy the premises. Buyer agrees to maintain premises in the same condition as of date of contract, reasonable wear and tear excepted. Buyer agrees to make monthly payments based on $33,000.00 at 11.5% for 15 years, each month from date of contract, until closing and transfer of title, which shall be one year from date of contract. First payment to begin 30 days from date of contract. (11 payments of $385.51 each) The amount applicable against principal will be deducted from the total amount due at closing. One year from date of contract, when the $8000. [sic] is paid and title is transferred, the mortgage will be amortized on the amount of principal balance remaining. It is understood that Seller will finance balance due on closing, at 11.5% per annum for a period of 15 years, first payment to be due one month after closing date. In case of default, the Landlord-Tenant Act will apply, as to a month-to-month tenancy and all monies paid shall be forfeited. It is understood that the binder deposit of $2000.00 will be released to Seller at the time the contract is signed by all parties.
The agreement for sale was dated January 14, 1986.
Marequita Williams occupied the subject property in January 1986. She paid the Purcells the $2,000 down payment. She failed to make any of the $385.51 monthly payments. A letter dated January 20, 1986, indicates that Joe Rogers, an insurance agent, advised the Purcells that Williams had not yet obtained insurance on the property. The insurance company refused to issue the insurance policy until the fallen tree limb mentioned in the contract *1082 was removed from the roof and the roof was repaired. A letter dated March 7, 1986, indicates the Purcells notified Williams that she was late on her payment and that the property was still uninsured. Williams later had a telephone conversation with Purcell in which Williams explained that she had been unable to find anyone locally who could remove the limb but had finally located someone in Ft. Walton Beach willing to remove it. Purcell again requested that Williams obtain insurance on the property, but Williams never did so before March 14, 1986, when a fire destroyed the house and caused Williams' death.
The Purcells filed a claim against Williams' estate for $33,000, which represented the difference between the selling price under the contract ($35,000) and the down payment ($2,000). Williams' estate was probated as a summary administration by her two sons and sole heirs, appellees Stephen and Philip Williams. Appellees received distribution of all assets in the estate.
The Purcells then filed a two-count complaint against appellees. Count 1 was an action for specific performance, which demanded that the estate be required to purchase the property for $33,000. Count 2 alternatively sought cancellation of the contract and damages for loss of the dwelling. Appellees raised two affirmative defenses. The first defense alleged that the Purcells failed to mitigate their damages because they knew there was no insurance on the property, yet failed to insure it themselves. The second defense alleged failure of consideration in that the house, which was a major part of the purchase, had been destroyed for reasons other than the negligence of Williams. The case was tried to the court, and only Terrence Purcell testified. Because the Purcells were aware that Williams had failed to obtain insurance on the property, the trial court found they could not obtain specific performance. The final judgment granted cancellation of the contract, but denied all monetary relief requested by the Purcells. Appellants have appealed this judgment.
The trial court erred in denying appellants all monetary relief for Williams' breach of the agreement. The trial court failed to recognize that the instrument in question is essentially a contract for deed which constituted a security transaction subject to the rules applicable to mortgages. The provisions we have quoted from the agreement make it essentially an installment land sale contract, which is, in effect, "a security agreement by which the seller retains legal title as security for the payment of the purchase price, typically paid in installments, during the life of the debt." Florida Real Estate Practice III, § 9.12 (2d ed. 1983). Section 697.01(1), Florida Statutes (1985), provides:
All conveyances, obligations conditioned or defeasible, bills of sale or other instruments of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money ... shall be deemed and held mortgages, and shall be subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages.
Consequently, as between themselves, the seller and buyer are respectively accorded the same remedies as the creditor and debtor in a mortgage transaction. Mid-state Investment Corp. v. O'Steen, 133 So.2d 455 (Fla. 1st DCA 1961); see also, Cain & Bultman, Inc. v. Miss Sam, Inc., 409 So.2d 114 (Fla. 5th DCA 1982); H & L Land Co. v. Warner, 258 So.2d 293 (Fla. 2d DCA 1972). In O'Steen this court, under circumstances not materially different from this case, held a contract for deed to be a mortgage subject to the rules of mortgage foreclosure.
The provision of the agreement which states that upon default the landlordtenant act would apply introduced an ambiguity that apparently led the trial judge not to construe this as a mortgage transaction. The apparent intent of this provision was to provide the sellers the right to take immediate possession of the premises upon default and as a consequence enable them to avoid the protections to the purchaser accorded *1083 by the laws governing mortgages. Thus it was invalid under the decision in O'Steen. As this purported lease provision was invalid, it provided no basis for the trial court to construe the agreement to be a lease or rental transaction rather than a mortgage transaction.
Therefore, appellants were limited to the remedies generally available to mortgagees, that is, foreclosure by action and sale, or an action in personam on the debt secured by the mortgage. 37 Fla.Jur.2d, Mortgages and Deeds of Trust, § 282 (1982).
We are not aware of any authority to support the trial court's decision to cancel the contract and deny appellants all monetary relief because they failed to mitigate damages by obtaining insurance after learning that the purchaser had not done so. The record shows that the Purcells contacted the purchaser about this default, demanded that she cure it, and that the purchaser was in the process of doing so. We have been directed to nothing in this record or to any legal authority that placed the Purcells under a duty to obtain the insurance coverage on the house in order to protect their rights against the purchaser for her default. In short, there is no legal or factual basis for this defense.
In view of this disposition, we find it unnecessary to reach the issue regarding specific performance.
The judgment is REVERSED and the cause is REMANDED for further proceedings.
NIMMONS and BARFIELD, JJ., concur.