THOMAS, J.
Dissenting.
I respectfully dissent from the majority’s decision on the merits, but I agree that this is a case of great public importance because “[m]arriage is one of the ‘basic civil rights of man,’ fundamental to our very existence and survival.” Loving v. Virginia, 388 U.S. 1, 12, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (quoting Skinner v. State of Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942)).
In essence, the en banc majority opinion rewrites and condenses the relevant statutory sections to read: No couple who fails *691 to obtain a marriage license will be considered legally married, regardless of any legitimate evidence of marriage to the contrary. The majority’s statute is clearer than the Legislature’s statute, but the judicial branch is bound by the words voted on by the Legislature, which undisputedly does not contain the above sentence.
The Legislature’s statute creates a factual question to determine whether a couple entered into a valid marriage “in good faith and in substantial compliance ” with the entire statutory scheme. § 741.211, Fla. Stat. This is unlike any other licensing scheme regulating professional activities. The Legislature did not prohibit marriage without a license; instead, it created a type of registration to ensure certain criteria are met. The Legislature’s statute is consistent with the recognition that a ceremonial marriage between an adult man and an adult woman unrelated by blood should not be rendered invalid merely because the couple did not obtain a governmental license.
Although Florida has abolished common-law marriage, it has not abolished unlicensed marriages. Should the State intend to do so, it must do so clearly and specifically. By its decision here, the majority has crafted a statute that proclaims that the parties, who engaged in a solemn, religious and public marriage ceremony, after receiving premarital counseling, are denied the fundamental right to be married. In addition, the couple’s two children are now deemed to be born out of wedlock. This result is contrary to the strong presumption of legitimacy attached to children born in wedlock. Knauer v. Barnett, 360 So.2d 399, 403 (Fla.1978).
In addition, the majority fails to consider any equity that might be relevant to the factfinder and must be a consideration under chapter 61, Florida Statutes. The majority’s new statute compels a court to countenance inequitable actions. Here, Appellee’s inequitable conduct has deprived Appellant of the protections accorded spouses under the law.
The procedures for contracting a valid marriage in Florida are regulated by chapter 741, Florida Statutes. As stated in section 741.211, Florida Statutes, “No common-law marriage entered into after January 1, 1968, shall be valid, except that nothing contained in this section shall affect any marriage which, though otherwise defective, was entered into by the party asserting such marriage in good faith and in substantial compliance with this chapter.” Nowhere in chapter 741 is it expressly stated that marriages conducted without a license are invalid or prohibited. In contrast, same-sex and incestuous marriages are prohibited. §§ 741.21, 741.212, Fla. Stat. (2002).
The Legislature is quite capable of writing a strict statute that prohibits an exception for unlicensed marriages. For example, unlicensed drivers, unlicensed lawyers, unlicensed doctors, and various other activities too numerous to mention are prohibited. See, e.g., §§ 322.03, 454.23, 458.327, Fla. Stat. In many of these examples an unlicensed person may incur criminal liability, and there is no defense for asserting “good faith” or “substantial compliance” with the relevant statutes.
A common-law marriage is defined as “ ‘[a] marriage that takes legal effect, without license or ceremony, when a couple live together as husband and wife, intend to be married, and hold themselves out to others as a married couple.’ ” Lowe v. Broward County, 766 So.2d 1199, 1210-1211 (Fla. 4th DCA 2000) (emphasis added) (citing Black’s Law Dictionary, 986 (7th ed. 1999). This case before us does not involve a common-law marriage; rather, in light of the public, solemn and reli *692 gious wedding ceremony, it involves an unlicensed marriage.
The absence of an express invalidation of unlicensed marriages may be considered an expression of legislative intent under the canon of statutory construction known as expressio unius est exdusio alterius. Prewitt Mgmt. Corp. v. Nikolits, 795 So.2d 1001, 1005 (Fla. 4th DCA 2001). This rule “requires that when a law expressly describes a particular situation where something should apply, an inference must be drawn that what is not included by specific reference was intended to be omitted or excluded.” Id. Where the Legislature has not expressly prohibited or invalidated unlicensed marriages, we may not read such a prohibition or invalidation into Florida law. See, e.g., State v. Rife, 789 So.2d 288, 293-94 (Fla.2001) (holding that legislature did not expressly prohibit downward-departure sentences in cases involving a minor’s consent to sexual activity, thus, courts have authority to impose such sentences).
Other state legislatures have expressly invalidated unlicensed marriages. See, e.g., In re Silverman’s Estate, 94 N.J.Super. 189, 227 A.2d 519 (1967) (noting that legislature expressly set out to abolish common-law marriages and invalidate marriages that occur without a license by stating unequivocally that “no marriage ... ‘shall be valid unless the contracting parties have obtained a marriage license.’ ”) (citing N.J. Stat. Ann. § 37:1-10); Dire v. Dire-Blodgett, 140 Idaho 777, 102 P.3d 1096, 1098 (2004) (holding that a marriage license is required for a valid marriage where the law expressly states, “Consent alone will not constitute marriage; it must be followed by the issuance of a license and a solemnization as authorized and provided by law.”); Carabetta v. Carabetta, 182 Conn. 344, 438 A.2d 109, 111 (1980) (holding that a marriage solemnized by a religious ceremony without a license was not void where Connecticut Statutes states, “No persons shall be joined in marriage until both have joined in an application ... for a license for such marriage,” but also provides for only a fíne for those who marry without obtaining a license and also that certain other marriages are void); but see Harlow v. Reliance Nat’l, 91 S.W.3d 243 (Tenn.2002) (holding that party was not a surviving spouse and thus not entitled to death benefits under workers’ compensation law because a marriage license was not obtained and Tennessee law provides that parties “shall” provide a license before being joined in marriage); Parks v. Martinson, 694 So.2d 1386, 1390 (Ala.Civ.App.1997) (holding that no valid statutory marriage occurred where parties did not obtain a license and statutory law required that “[n]o marriage shall be solemnized without a license.”).
An unlicensed marriage is analogous to an unrecorded deed. “A deed is merely an instrument formally evidencing the transfer of an intangible title interest in and to land and when delivered it fulfills its purpose and is exhausted and remains only as evidence of the transfer that occurred.” Cain & Bultman, Inc. v. Miss Sam, Inc., 409 So.2d 114, 120 n. 5 (Fla. 5th DCA 1982). An unrecorded deed does not indicate that there was no transfer of land. See Sasha & Sasha, Inc. v. Stardust Marine, S.A., 741 So.2d 558 (Fla. 4th DCA 1999) (holding that where a deed was unrecorded, the transfer of the land was deemed to have occurred just prior to commencement of action under the Uniform Fraudulent Transfer Act). Likewise, in my view, an unlicensed marriage does not indicate that a marriage did not occur; it indicates a lack of evidence of the marriage.
A solemnized marriage without a marriage license is not per se invalid under *693 Florida law, because the fundamental right of a man and woman to marry cannot be denied on the basis of ambiguous statutory language. “Once a marriage is shown to have been ceremonially entered into it is presumed to be legal and valid.” Stewart v. Hampton, 506 So.2d 70, 71 (Fla. 5th DCA 1987) (citing Grace v. Grace, 162 So.2d 814 (Fla. 1st DCA 1964)). In addition, parties seeking to dissolve their marriage are not required to demonstrate the existence of a marriage license. § 61.052(7), Fla. Stat.; see, e.g., Cobo v. Sierralta, 13 So.3d 493, 496-98 (Fla. 3d DCA 2009) (quoting Stewart, 506 So.2d at 71, and Grace, 162 So.2d at 317, for the proposition that the party attacking a marriage’s validity bears the burden of rebutting the presumption that the marriage is valid).
The absence of an express invalidation of unlicensed marriages, combined with the importance of marriage recognized in the law, demonstrates that unlicensed, ceremonial marriages are not facially invalid in Florida. While the regulation of marriage is within the purview of the legislative branch, should the Legislature intend to invalidate all unlicensed ceremonial marriages, then Florida’s laws must expressly prohibit such unions. The majority’s decision that an unlicensed marriage is invalid in all circumstances will have wide-sweeping ramifications, which should be carefully evaluated by the Legislature, and not decided by the judiciary.
A valid marriage affects confidential spousal communications, wrongful death, workers’ compensation claims, and social security benefits. See, e.g., Blackburn for Blackburn v. Taylor, 566 So.2d 915 (Fla. 1st DCA 1990) (holding that claimant was a surviving spouse of the deceased and thus entitled to workers’ compensation death benefits); Yokie v. State, 773 So.2d 115 (Fla. 4th DCA 2000) (holding that defendant’s conversation with his spouse was protected by marital privilege); King v. Font Corp., 612 So.2d 662 (Fla. 2d DCA 1993) (holding that mother was the father’s “surviving spouse” and thus entitled to an award of lost support and services under the Wrongful Death Act); Hisquierdo v. Hisquierdo, 439 U.S. 572, 575, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) (discussing spouse’s entitlement benefits under the Social Security Act). Such a monumental decision declaring all unlicensed ceremonial marriages invalid is properly assigned to the Legislature under the separation of powers requirement of Article II, Section 3 of the Florida Constitution.
Thus, it follows that Appellant, the party asserting that she entered into a valid marriage in good faith and in substantial compliance with chapter 741, is entitled to an evidentiary hearing to prove her claim. It will then become Appellee’s burden to overcome the strong presumption under the law that this solemn, religious and ceremonial marriage was valid ab initio.
A factfinder could determine that Appellant substantially complied with chapter 741 by taking part in premarital counseling, participating in a solemn marriage ceremony by an authorized minister, and entering into a marriage that is not common-law, same-sex, or incestuous in nature. See generally ch. 741, Fla. Stat. In addition, “proceedings under chapter 61 are in equity and governed by basic rules of fairness as opposed to the strict rule of law. The legislature has given trial judges wide leeway to work equity in chapter 61 proceedings.” Rosen v. Rosen, 696 So.2d 697, 700 (Fla.1997) (internal citations omitted). Based on the facts of this case, it appears that Appellee may have unclean hands. Any equitable result would include a validation of the parties’ marriage if it can be shown that Appellant entered into the marriage in good faith and in substantial compliance with chapter 741. The trial court, however, made no factual findings *694 regarding whether Appellant entered into the marriage in good faith. As such, a remand is required for the trial court to make such a determination.

Conclusion

Based on the foregoing, I would reverse the trial court’s determination that a valid marital relationship did not exist, and remand for proceedings to determine whether Appellant entered the ceremonial marriage in good faith and in substantial compliance with chapter 741, Florida Statutes, and whether Appellee’s inequitable conduct compels legal recognition of the marriage.