137 So.2d 259 (1962)
David APPLEFIELD, Appellant,
v.
FIDELITY FEDERAL SAVINGS & LOAN ASSOCIATION OF TAMPA et al., Appellees.
No. 2339.
District Court of Appeal of Florida. Second District.
January 26, 1962.
Rehearing Denied February 21, 1962.
Page S. Jackson, of Saltsman & Jackson, St. Petersburg, for appellant.
S.E. Simmons, of Bussey, Simmons & Owen, St. Petersburg, for appellees.
SMITH, Judge.
Barger was the owner of real property, and he leased the same to Jicha and Hayes for a term of ninety-nine years. The lease granted an option to the lessees to buy the reversion interest of the fee owner for $45,000.00. The lease permitted, but did not require, the construction of improvements on the property. In order to obtain funds with which to construct a motel on the property, the lessees applied to Fidelity Federal Savings & Loan Association of Tampa, (appellees here) the plaintiffs in the trial court, for a loan in the amount of $75,000.00. The lessees executed their note and mortgage, describing the real property in a form as though they were the sole owners, as security for the loan. The Association then received the following agreement from Barger:
"THIS AGREEMENT, made and entered into this 2nd day of January, A.D., 1958, by and between ERNEST A. BARGER and LESA S. BARGER, his wife, parties of the first part, and FIDELITY FEDERAL SAVINGS AND LOAN ASSOCIATION OF TAMPA, FLORIDA, Party of the Second Part,
"WITNESSETH
"WHEREAS, Ernest A. Barger and Lesa A. Barger, his wife, are the owners in fee of certain premises, to-wit:
Lots 26 and 27, Madeira Beach Vista, Tract 2, according to the plat thereof *260 recorded in Plat Book 16, Page 104, Public Records of Pinellas County, Florida,
and
Lots 134, 135, 136 and 137, North Madeira Shores, according to plat thereof recorded in Plat Book 23, Page 68, Public Records of Pinellas County, Florida.
"WHEREAS, the parties of the first part have let and leased the abovedescribed premises for a period of ninety-nine (99) years to JAMES JICHA, JR. and D. ALBERTA JICHA, his wife, and MILLARD C. HAYES and LOUISE G. HAYES, his wife, the sum of SEVENTY-FIVE THOUSAND AND NO/100 DOLLARS ($75,000.00) upon the note of James Jicha, Jr. and D. Alberta Jicha, his wife, and Millard C. Hayes and Louise G. Hayes, his wife, secured by a mortgage on the premises above described, it being understood and agreed that the Mortgagee shall withhold an amount of at least twenty-five (25%) percent as and for a final payment and drawal to insure that all bills for labor and materials have been paid, and
"WHEREAS, as the inducement to the Party of the Second Part for making the loan, the Parties of the First Part have heretofore agreed and consented to subordinate their interest in the premises as aforesaid to the lien of the mortgage which shall be made to James Jicha, Jr. and D. Alberta Jicha, his wife, and Millard C. Hayes and Louise G. Hayes, his wife, by the Party of the Second Part.
"NOW, THEREFORE, the Parties of the First Part in pursuance of this Agreement and in consideration of the sum of ONE DOLLAR ($1.00) and other good and valuable consideration to them in hand paid by the party of the second part, do, for themselves, their personal representatives and assigns, hereby covenant, consent and agree to and with the Party of the Second Part, its successors and assigns, that their ownership of the property hereinbefore described and all of their interest in and to said premises is, shall be and shall continue to be subject and subordinate in lien to the lien of the mortgage to be made to the Party of the Second Part as aforesaid."
The above agreement was duly executed by the parties with two witnesses and properly acknowledged. The mortgage and this agreement were recorded in the Public Records of the County. Subsequently, the lessees obtained an additional loan in the amount of $25,000.00 from the Association and executed their note and mortgage describing the property as though they were the sole owners. There was no agreement between Barger and the Association on the $25,000.00 loan. Barger conveyed his reversionary fee title to the property to David Applefield (appellant here), one of the defendants below. Then the lessees conveyed their leasehold interest to Holiday Isles Motel Corporation. The taxes on the property became delinquent and no payments were made on the two mortgages to the Association after March, 1960. The Association filed its complaint for foreclosure of its two mortgages against all of the defendants, alleging a prior and superior lien against all of the interests of all of the defendants. The defendant, David Applefield, answered in which he took the following positions:
That the agreement of January 2, 1958, between Barger and the Association, did not subject Applefield's fee estate to the lien of the first mortgage, but to the contrary, the agreement had the effect only of reversing the priority of Applefield's lessor's lien for rent and the Association's mortgage lien; and,
That if the above contention was not correct, then Applefield's fee estate in reversion was only secondarily liable.
After hearing, the Court entered a final decree finding:
*261 That Applefield purchased Barger's reversion with actual and constructive notice and is thereby bound by the terms of the agreement;
That the agreement of January 2, 1958, waived Applefield's right to collect the rents provided by the lease;
Applefield's position is not that of a surety;
That the first mortgage held by the Association was a valid first lien upon both the fee and leasehold estates in the real property and that the total sum due thereon included interest, attorneys fees, plus sums advanced by the mortgage holder for taxes, insurance, title search, receivers expenses, and payments of rent to Applefield; and,
That the second mortgage was a valid second lien upon the leasehold interest in the real property and that it adjudicated the amounts due thereon, including interest and attorneys fees.
The decree then ordered the payment of the aggregate sums adjudged to be due on both of the mortgages; and in default, directed sale of both the fee and leasehold estates in the property with directions that after payment of the costs the proceeds be distributed to first pay the amounts due under the first mortgage and then to pay the amounts due under the second mortgage, with the balance, if any, to be held pending the further order of the Court.
As to the interest of Applefield, the decree directed that he may, at his election, redeem his reversion from the lien of the Association's first mortgage upon payment to the Association of the aggregate of the sums due under that mortgage, provided that the same be paid at any time up to the commencement of the sale; and that in the event of such redemption, the sale shall be limited to a sale of the leasehold interest for the purpose of satisfying the Association's second mortgage.
Applefield first contends that the intent, purpose and effect of the agreement of January 2nd was only to make the lessors' prior right to collect rent and to terminate the lease in event of default or breach subordinate to the lien of the Association's first mortgage. Such a contention would require the Court to disregard the recital in the agreement that Barger is the owner in fee of certain premises, to-wit: the real property there described and that in order to induce the Association to make the loan, Barger agreed and consented to subordinate his interest in the premises as aforesaid to the lien of the mortgage. In addition, the agreement then, after establishing these premises, concludes to the effect that Barger agrees with the Association that Barger's ownership of the property described and all of his interest in and to said premises is, shall be, and shall continue to be subject and subordinate in lien to the lien of the mortgage. No effort was made to modify the agreement, nor to offer extensive evidence to establish the intent of the parties. The Chancellor correctly construed the agreement in holding that it subjected the reversionary interest of the lessors to the lien of the first mortgage, together with the leasehold interest, which, when combined, constitute all of the estate and interest in the real property.
It is the rule in Florida that a sale in parcels is preferred over a sale en masse where the former is practical and equitable to all parties. 22 Fla.Jur., Mortgages, § 355; Swann v. L. Maxcy, Inc., 1935, 120 Fla. 283, 162 So. 696; and Browning v. Bank of Lake Alfred, Fla.App. 1958, 101 So.2d 898.
We find it is not necessary for this Court to determine whether or not Applefield's position was that of a surety so as to entitle him to have the property of the lessees first sold and the proceeds of the sale applied in satisfaction of their debt as set forth in 50 Am.Jur., Suretyship, § 258. Even though Applefield was not one of the debtors, we arrive at this conclusion by mentally charting the course required by such a conclusion under the unusual circumstances that are *262 present here. Bearing in mind the holding that the first mortgage encumbers all of the interest in all of the property, then even if you establish Applefield's reversionary title as secondarily liable, you would find it necessary to sell the leasehold interest to satisfy the first mortgage; and if insufficient, to again sell the leasehold interest to satisfy the rents due to Applefield; and if insufficient, to again sell the leasehold interest to satisfy the second mortgage; and if insufficient, to then sell the reversionary fee title of Applefield, and since his fee title is security only for the first mortgage, the intervening sales would be cancelled out, thereby making a circle and returning to the point of beginning.
The provision in the final decree permitting Applefield to redeem his interest from the lien of the first mortgage brings the decree within the provisions of the general rule that mortgage sales will be controlled by the Court so that no injustice will be done to either party; the sale may be of the entire property or of such part as will best conduce to that end, and the circumstances of each particular case must be considered in determining in what manner the sale should be made. 37 Am.Jur., Mortgages, § 618. This determination is committed to the discretion of the Court, 59 C.J.S. Mortgages § 729. No abuse of this discretion has been demonstrated.
The decree prorated the attorneys fees between the two mortgages, but added to the first mortgage the amount advanced for taxes, insurance, title search, receivers expenses, and payments of rent. The agreement subordinated Applefield's rights to collect rents to the lien of the first mortgage. By the terms of the first mortgage, the Association had the right to pay all of said advances; and when so paid, they became an amount due and a part of the superior lien of the first mortgage, and the Chancellor was not required to prorate these payments between the two mortgages. We are cognizant of the rule established in Swann v. L. Maxcy, Inc., supra, that in for foreclosure of two mortgages, one encumbering one parcel and another encumbering the first parcel and an additional parcel, that the costs should be apportioned so that the expenses thereof would fall on the property embraced on each mortgage. In this instance, however, we note that all of these costs were for advances respecting the leasehold interest and the reversionary interest and all these costs would have been required in these same amounts in foreclosure only of the first mortgage, and there is no factor which could be applied to apportion them.
The Court has carefully considered the unusual circumstances of this cause as reflected in the record, the briefs, the arguments of counsel, and the other points raised by the appellant.
The decree is affirmed.
ALLEN, Acting C.J., and KANNER, J., concur.