849 So.2d 1160 (2003)
BANKERS TRUST COMPANY, as Trustee, Appellant,
v.
Barbara T. EDWARDS, et al., Appellee.
No. 1D02-3158.
District Court of Appeal of Florida, First District.
July 21, 2003.
*1161 Alan Rosenthal, Esquire and Jack R. Reiter, Esquire of Adorno & Yoss, P.A., Miami, for Appellant.
Eddie M. Anderson, Esquire of Eddie M. Anderson, P.A., Lake City, for Appellee.
BENTON, J.
Bankers Trust Company, as trustee (Bankers Trust), appeals an order entered in a foreclosure proceeding, styled Order Granting Motion to Cancel Foreclosure Sale and Confirming Previous Sale. Earlier in the same proceeding, a final judgment of foreclosure had been entered. We therefore have jurisdiction. See Fla. R.App. P. 9.130(a)(4). We reverse.
Bankers Trust foreclosed a mortgage it held on property Barbara Tomlin Edwards owns in Columbia County, and obtained a judgment in the amount of $45,282.77, on April 16, 1999. A foreclosure sale scheduled for June 11, 1999, was cancelled upon the filing of a suggestion of Ms. Edwards' bankruptcy. Eventually, after her bankruptcy case was dismissed, the foreclosure sale was reset for April 17, 2002, although no sale occurred then, either. When the foreclosure sale was again rescheduled, Ms. Edwards filed her Motion to Cancel Foreclosure Sale and to Confirm Previous Sale.
Despite its name, the order under review granting Ms. Edwards' motion did not confirm a sale of the foreclosed property. For reasons that are unclear from the record,[1] no sale ever took place. Nor did Ms. Edwards exercise her right to redeem the property at "any time before the filing of a certificate of sale by the clerk of the court," § 45.0315, Fla. Stat. (2002), even though the clerk has yet to issue such a certificate. Instead, persuaded that Bankers Trust had been guilty of unidentified inequitable conduct, the trial court ruled that the foreclosure sale would "not be rescheduled again." In effect, it extinguished Bankers Trust's security interest by granting Ms. Edwards' motion, the earlier order of foreclosure notwithstanding.[2]
*1162 This was error. Bankers Trust is entitled to have the property sold and the proceeds applied against the foreclosure judgment. See, e.g., First Nationwide Sav. v. Thomas, 513 So.2d 804, 805 (Fla. 4th DCA 1987) ("A lender has the right, under the statutes, except under extraordinary circumstances not found in this record, to proceed with the sale of any real estate on which it has successfully foreclosed its mortgage."); Orlando Hyatt Assocs., Ltd. v. Fed. Deposit Ins. Corp., 629 So.2d 975, 977 (Fla. 5th DCA 1993) ("`Under Florida law, a mortgage merely creates a lien against the land with title and right of possession remaining with the mortgagor/owner ... to protect a borrower's due process rights, the courts have determined that a mortgagee can acquire possession upon default only through judicial foreclosure and purchase at sale.'") (citing Four Star Aviation, Inc. v. United States, 409 F.2d 292 (5th Cir.1969), and Snow v. Nowlin, 125 Fla. 166, 169 So. 598 (1936)).
On remand, in the event Ms. Edwards can prove that inequitable conduct, if any, by Bankers Trust impeded earlier sale efforts and requires equitably adjusting the amount of Ms. Edwards' indebtedness to Bankers Trust, the trial court may make such an adjustment. See Applefield v. Fid. Fed. Sav. & Loan Ass'n, 137 So.2d 259, 262 (Fla. 2d DCA 1962) ("[M]ortgage sales will be controlled by the Court so that no injustice will be done to either party ... the circumstances of each particular case must be considered in determining in what manner the sale should be made.").
Reversed and remanded, with directions that a foreclosure sale be scheduled.
WOLF, C.J., CONCURS; ERVIN, J., DISSENTS WITH OPINION.
ERVIN, J., dissenting.
Although the order canceling the foreclosure sale may be in need of clarification, I cannot agree that reversal is required on the theory that its effect is, in the majority's words, an extinguishment of "Bankers Trust's security interest in the property by granting Ms. Edwards' motion." To enable the reader to make his or her own independent assessment of the court's order, I am attaching the textual portion of it as an appendix to this opinion. Those interested in reviewing the order will note that the lower court precluded Bankers Trust, because of extraordinary circumstances, from rescheduling a clerk's foreclosure sale. As is apparent from the final quoted sentence, the order did not, however, bar Bankers Trust from proceeding with an execution sale.
The two statutory procedures are not synonymous. A clerk's sale, which was earlier directed in the final judgment of foreclosure, is carried out in accordance with the provisions of section 45.031, Florida Statutes (2002). Under this procedure, no execution occurs. See § 45.031(9). In contrast, execution sales, undertaken pursuant to sections 56.21 through 56.25, Florida Statutes (2002), obviously require a prior levy on the property sought to be sold. Other differences in the two procedures are set out in the following chart.

*1163
 Judicial Sale (§§ 45.03145.0315) Execution Sale (§§ 56.2156.29)
 Conducted by clerk by order of the court.  Conducted by sheriff (in person or by deputy),
 usually at courthouse. Lien perfected
 on delivery of writ by Sheriff.
 Result of judicial proceeding, under judgment,  Execution sale made pursuant to writ requiring
 order, or decree (and oversight) of a designated officer to levy on the
 court. Court appoints officer to sell specifically property of a judgment debtor and sell it
 described property. Court prescribes as prescribed by statute to satisfy a money
 the time, manner and conditions of judgment. Deference to judgment creditor's
 sale. Must be public, unless so authorized terms. Must be a public sale.
 by court order to be a private sale.
 All creditors may purchase at the sale, but  Priority of judgment creditor's lien typically
 they stand in the same position as a established at time writ of execution is
 stranger whose bid was accepted. delivered to Sheriff.
 Notice published twice at weekly intervals  Notice published four times at weekly intervals
 with last publication at least five days before in county where the property is
 the sale. located.
 Five percent of the bid must be paid before  Payment of bid due in full before legal
 the close of business on day of sale (all time for sale expires (sale will continue if
 sales are for cash). cash is not obtained and paid).
 After the sale, clerk files certificate of sale  Sheriff must execute and deliver a sheriff's
 and serves a copy on all parties not in deed for real property to the successful
 default. bidder. Sheriff makes an endorsement on
 the execution, and files this return with
 clerk.
 Objections to the sale or to the amount bid  Sheriff is liable for penalties for failure to
 must be served within ten days after the execute process or for making a false return.
 certificate of sale is filed. If objections are Sale may be set aside by court for
 filed, court must hold hearing. If sustained, mistake, accident, surprise, fraud, misconduct
 a resale should be ordered. If or irregularity.
 objections are overruled (or none filed), the
 clerk must file and record a certificate of
 title.
 Right to redeem continues until clerk files  Right to redeem ends on the day of the
the certificate of sale, or until time specified execution sale (but judge has discretion to
 fied in judgment (whichever is later). extend if equity requires).
 Purchaser takes title as is, unless terms of  Purchaser takes title as is for which he or
 sale provide otherwise. she has or should have notice.
 Deficiency judgment available if sale  Execution can be used to levy on other
 doesn't satisfy debt. property subject to levy until judgment is
 satisfied.

A comparison of the two processes shows that creditors generally prefer the remedy of a clerk's sale. It is far more expeditious and efficient than that provided by the execution or sheriff's sale. Ignoring the alternative procedure afforded by execution, the majority states that on remand Edwards may be given the opportunity to prove whether any inequitable conduct of Bankers Trust impeded the earlier sale efforts, and if the lower court so finds, it may adjust the sale price. The court, however, has already made a finding of extraordinary circumstances caused by the bank's inexcusable conduct, which resulted in the cancellation of the sale after it had begun, at considerable expense to *1164 Edwards.[3] The existence of extraordinary circumstances has been recognized as a condition that may prevent the rescheduling of a foreclosure sale. See Chem. Mortgage Co. v. Dickson, 651 So.2d 1275 (Fla. 4th DCA 1995); A Mortgage Co. v. Bowman, 642 So.2d 123 (Fla. 4th DCA 1994).
The majority's reliance on the interpretations of counsel during oral argument as an aid to its own construction of the lower court's order is, to say the least, a novel approach to judicial decision-making, as is its reliance on representations made at oral argument that no sworn evidence was taken at the hearing on the motion to cancel the foreclosure sale. It is unclear from the opinion whether the majority considers statements of this sort as a valid substitute for the lack of an unreported hearing, despite the opportunity afforded to the parties by Florida Rule Appellate Procedure 9.200(b)(4) to prepare an approved statement of the proceeding. In fact, the record reveals that Bankers Trust twice caused the foreclosure sale to be rescheduled: when the date for same fell on a holiday, and when, in the words of appellant: "Bankers Trust was unable to timely provide bidding instructions to its authorized bidding agent for the April 17, 2002 foreclosure sale. As a result, Bankers Trust could not bid at the sale resulting in its cancellation by the clerk."
It is true the record does not support the court's finding that appellee was adversely affected by appellant's conduct due to the considerable expense she was required to undergo by reason of the sale's second cancellation, in that, as stated, the hearing was not transcribed. I am not sure, however, that counsel's oral-argument admission there was no "sworn testimony" can trump the presumption of correctness accorded the trial court's findings by Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla.1980), particularly when we do not know whether the parties may have agreed at the hearing that appellee was so disadvantaged.
In any event, the order, in my judgment, imposes on Bankers Trust only the sanction of having to comply with the more onerous procedure demanded by section 56.31, when the court would once again set the property for sale. Because I find nothing in the order reasonably implying that the court extinguished Bankers Trust's security interest in the property, or that the court abused its equitable discretion in requiring an execution sale, I would affirm.

APPENDIX
This cause came to be heard upon the Motion to Cancel Foreclosure Sale and to Confirm Previous Sale served by Defendant Barbara Edwards on June 7, 2002. The Court having considered said Motion, and having heard the arguments of counsel, and having reviewed the case law presented to it by Plaintiff's counsel, does hereby Order as follows:
The Court is persuaded by Defendant's argument that "extraordinary circumstances" exist in this matter to the degree that Plaintiff is not entitled to a rescheduled Clerk's foreclosure sale. Plaintiff's agent did attend the clerk's sale on April 17, 2002. It was Plaintiff's misconduct, or inequitable conduct, which occurred after the deputy clerk had already begun the sale that led to the sale not being completed. Defendant was adversely and inequitably affected by Plaintiff's conduct, in that she had arranged for a third party to bid *1165 on the property for her at the sale, at considerable expense to her. Plaintiff offered no excuse for its conduct at the sale.
Accordingly, the sale currently scheduled for July 3, 2002 should not have been rescheduled, and so it is hereby cancelled, and will not be rescheduled again.
The Final Judgment entered in this matter on April 16, 1999 shall stand as to the amount owed. Execution may be let to issue on said Final Judgment.
NOTES
[1] While the trial court made findings that Bankers Trust's (unspecified) inequitable conduct gave rise to "extraordinary circumstances," the parties acknowledged at oral argument that no evidence to support such findings had been adduced. Counsel for Bankers Trust stated: "There was no evidence presented at the court below at the hearing giving rise to the order appealed from." Answering a question from the bench, counsel for Ms. Edwards agreed: "No sir, we did not have any sworn evidence."
[2] At oral argument, both parties interpreted the trial court's order as denying Bankers Trust the ability to force a sale of the mortgaged property. Counsel for Ms. Edwards stated: "I do not believe Judge Douglas ... had in mind that this property could be sold under some other process." Similarly, counsel for Bankers Trust argued:

There is an alternative remedy; however, it would be, in our view, illogical to read Judge Douglas' order that way because whether it is by clerk's sale or sheriff's sale... if the Judge had intended for us to be able to force a sale, by clerk or by sheriff, of the property, he could have just denied the motion to confirm the prior sale filed by appellee below and just permitted us to go forward with the sale that Judge Douglas ordered to be held ... I believe the only fair reading of Judge Douglas' order is that you can't execute on this property, but if she's got any other property, then you can execute on it ...
....
When one looks at the practical effect of the Judge's order, again, there would be no difference.... The procedures are similar... it's just a different officer of government who is carrying out the sale. So that if he had intended for us to be able to execute on the homestead ... there would have been no purpose served, no benefit to either party, no burden to either party, by denying the motion to confirm the prior sale ...
Asked whether the trial court's order had destroyed Bankers Trust's security interest in the property, Ms. Edwards' counsel replied: "Yes, sir, by [Bankers Trust's] own actions according to the [trial] judge and by the inequitable conduct ..."
[3] In that there is nothing in the record supporting or refuting these findings, we are required to presume their correctness. See Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla.1980).