GRIFFIN, J.
Jeanne Morris and Chuck Pate [“Morris and Pate”] appeal the trial court’s order granting Appellees’, Neil T. and Lisa M. Barzano [“Barzanos”], summary final judgment on their claim for ejectment, foreclosure and reasonable rental value. We reverse.
*823 This case is about rights to a single piece of property, initially owned by Ronald and Carla Gagliano [“Gaglianos”]. The Gaglianos mortgaged the property to Arthur Osteen. The Gaglianos later defaulted on the mortgage and, on January 15, 2004, Osteen obtained a Final Judgment of Foreclosure. The foreclosure judgment ordered the court clerk to sell the property by public sale, but the Gaglianos were in Chapter 13 bankruptcy proceedings. The automatic stay associated with that proceeding apparently interfered with a sale on the scheduled date.
On May 17, 2004, with the approval of the bankruptcy court, the Gaglianos entered into an agreement to lease a portion of the property to Morris and Pate. The lease was for a two-year term and included an option for Morris to purchase the property for $275,000. Morris and Pate made improvements to the property and operated a restaurant and lounge on the premises.
On July 8, 2004, Osteen assigned the mortgage he had against the Gaglianos’ property to the Barzanos for value. The Gaglianos’ bankruptcy action was later dismissed, and the Barzanos renewed the foreclosure action against the property. On June 22, 2005, the circuit court issued an Amended Final Judgment of Foreclosure. According to this amended judgment, the Barzanos were due $282,500.25, plus interest. If that amount were not paid, along with interest and all costs accruing after the judgment, the clerk of the court was to sell the land on July 21, 2005, by public sale, and the proceeds applied to satisfy the Barzanos’ foreclosure judgment against the Gaglianos. As is typical, the foreclosure judgment recited:
6. At the conclusion of the public sale, upon the filing of the certificate of sale, defendant and all persons claiming under or against defendant since the filing of the notice of lis pendens shall be foreclosed of all estate or claim in the property and the purchaser at the sale shall be let into possession of the property.
On July 14, 2005, the circuit court granted Morris and Pate’s motion to intervene in the foreclosure proceedings to protect their interests under the lease. Then, before the date of the scheduled sale, the Gaglianos and the Barzanos entered into an agreement for a deed in lieu of foreclosure, whereby the Barzanos agreed to release the Gaglianos from any personal liability under the foreclosure judgment in exchange for a quitclaim deed to the property. Title was conveyed to the Barzanos on about July 7, 2005. At the Barzanos’ request, the court subsequently cancelled the foreclosure sale.
On August 4, 2005, the Barzanos filed an action for ejectment and foreclosure against Morris and Pate. Morris and Pate admitted that their leasehold interest was subject to the January 15, 2004, foreclosure judgment. However, Morris and Pate contend that their rights under the lease are valid as against the Barzanos’ ejectment claim because that claim is based on the Barzanos’ title and not on their foreclosure judgment. Morris filed an .affidavit stating that she made proper rent payments to the Gaglianos or their bankruptcy trustee throughout the term of the lease, up until the time that the Gaglia-nos transferred over their rights in the property to the Barzanos. Morris asserted that she tendered rent to the Barzanos and honored all other terms of the lease agreement and exercised her option to purchase under it, but the Barzanos have refused to honor the agreement.
On November 21, 2005, the Barzanos filed a motion for summary judgment on the ejectment claim, and later filed a motion to determine and award reasonable *824 rental value to the Barzanos for Morris and Pate’s use of the property. The trial court subsequently issued a summary judgment granting ejectment and reasonable rental value, ruling that the lease was not binding on the Barzanos.
In deciding in favor of the Barzanos, the trial court made several findings. In pertinent part, the court said:
The original Judgment of Foreclosure, entered January 15, 2004, which foreclosed the mortgage encumbering the real property subject to this dispute, was prior in time to the lease with option asserted by Intervenors which was dated May 4, 2004. The lease with option was given by Gagliano while he was the foreclosure judgment debtor and the debtor in his bankruptcy proceeding. As determined by this court in its November 7, 2005 order, the lease with option could not grant any right to occupancy, use or ownership greater than Gagliano’s equity of redemption. By executing the July 7, 2005 deed, Mr. and Mrs. Gagliano deeded all their, right, title, interest in the subject property to the Barzano’s. [sic]
The lease with option was subject to the operation of 695.01 F.S. because it was given for a term of two years, but it was not recorded at the time the Barzano’s obtained the deed from the Gagliano’s. The Barzano’s [sic] as assignees from Osteen, stood in Osteen’s shoes as creditors of the Gagliano’s [sic], with a valid lien on the subject property.
Thus, the trial court appears to have concluded that, subsequent to foreclosure judgment, the Gaglianos could not have conveyed a lease superior to the Barzanos’ rights in the property. Alternatively, the court appears to have reasoned that the Barzanos subsequent quitclaim title took priority over the lease under section 696.01, because the lease was not recorded. After making the above findings, the court concluded that the Barzanos were entitled to immediate possession of the property. We disagree and reverse.
On appeal, Morris and Pate argue that the Gaglianos did have the power to convey a valid lease. Also, because the Barzanos’ ejectment claim is based upon the title they received through the quitclaim deed[1] and because the Barzanos had actual notice of Morris and Pate’s lease when they accepted the quitclaim deed, their title is subject to that lease.
The Barzanos contend that “the lease and the option rights claimed by [Morris and Pate]” have always been “subject to the pre-existing rights of the [Barzanos] as owners of the Osteen mortgage and as judgment creditors.” They urge that because the lease is subject to the Barzanos’ foreclosure judgment, it is also subject to the Barzanos’ title under the quitclaim deed. They rely on section 695.01(1), Florida Statutes, to support their contention that their rights as judgment creditors defeat Morris and Pate’s rights under the lease.
In Florida, a mortgage is simply a lien on the property to which it relates, and not “a conveyance of the legal title or of the right of possession.” § 697.02, Fla. Stat. (2005). To enforce the mortgage lien, the mortgagee must file a foreclosure suit and obtain a judgment of foreclosure. *825 Bowman v. Saltsman, 736 So.2d 144, 146 (Fla. 5th DCA 1999). Upon obtaining a foreclosure judgment, the mortgagee is “entitled to have the property sold and the proceeds applied against the foreclosure judgment.” Bankers Trust Co. v. Edwards, 849 So.2d 1160, 1162 (Fla. 1st DCA 2003); see also Cain & Bultman, Inc. v. Miss Sam, Inc., 409 So.2d 114, 118 (Fla. 5th DCA 1982). In the foreclosure process, the mortgagee only acquires rights of possession and title in the mortgaged property if there has been “default, court foreclosure, and sale to the mortgagee and transfer of title to him according to law.” Martyn v. First Fed. Sav. & Loan Ass’n, 257 So.2d 576, 580 (Fla. 4th DCA 1971).
During the foreclosure process, the mortgagor retains a right of redemption. The right of redemption is a common law and statutory right incident to every mortgage. Quinn Plumbing Co. v. New Miami Shores Corp., 100 Fla. 413, 129 So. 690, 692 (1930); § 45.0315, Fla. Stat. (2005).[2] The right of redemption may be exercised by the “mortgagor or the holder of any subordinate interest,” including lessees. § 45.0315, Fla. Stat. (2005); Dundee Naval Stores Co. v. McDowell, 65 Fla. 15, 61 So. 108, 112 (1913); Burns v. Bankamerica Nat’l Trust Co., 719 So.2d 999, 1001 (Fla. 5th DCA 1998); Riley v. Grissett, 556 So.2d 473, 475 (Fla. 1st DCA 1990). As explained in Florida Real PROPERTY Litigation,
[t]he phrase “right of redemption” has a twofold meaning. When used with respect to a mortgagor, it refers to the right of a mortgagor, before being foreclosed from that right, to satisfy the mortgage indebtedness and thus clear the property from the encumbrance of the mortgage. When used with reference to a junior lienor, it refers to the right of the junior lienor, before being foreclosed from it, to satisfy a prior mortgage by payment of the debt secured by such prior mortgage, thereby becoming equitably subrogated to all rights of the prior mortgagee.
ANTONIO MARTINEZ, JR., GEOFFREY L. TRAVIS, AND BRAD REDLEIN, FLORIDA REAL PROPERTY LITIGATION § 5.47 (4th ed.2005). The right to redeem the property terminates when the certificate of sale is filed by the clerk or at the time specified in the foreclosure judgment, whichever is later. § 45.0315, Fla. Stat. (2005).[3]
While the law clearly defines when the mortgagor’s right of redemption ends, it is less clear how the mortgagor’s other ownership rights in the property are affected by foreclosure. It appears that, under Florida law, the mortgagor’s rights of own *826 ership, including the right of alienation, continues as long as the mortgagor’s right of redemption exists. In John Stepp, Inc. v. First Federal Savings & Loan Ass’n, 379 So.2d 384 (Fla. 4th DCA 1980), the mortgagor defaulted on his mortgage and a foreclosure judgment was entered in favor of the mortgagee. After the foreclosure sale, the mortgagor transferred legal title of the property to the appellant by warranty deed. The appellant then paid into the court registry the amount required to redeem the property. The transfer of the deed and the payment of the redemption amount occurred prior to the time redemption rights were cut off.[4] The issue on appeal was whether or not the appellant had the right to exercise the equity of redemption. The Fourth District court said that “the law favors redemption by anyone who has an interest in the mortgaged premises who would be a loser by foreclosure.” Id. at 386. The court then held that since the “appellant held legal title, it was no stranger to the property” and directed the trial court to grant the motion for redemption in favor of appellant. Essential to the Fourth District court’s holding is the conclusion that the mortgagor retained the right to transfer valid title of the property until some time after the foreclosure judgment and sale.
Applied to this case, the analysis of John Stepp tells us that the Gaglianos could convey a lease to Morris and Pate. The lease was subject to elimination upon sale in foreclosure, but no sale ever took place. It is often the case that a mortgagee is willing to accept the deed to the mortgaged property in exchange for not foreclosing against the mortgagor in circuit court. These “deed in lieu of foreclosure” transactions allow the mortgagor to escape the possibility of a deficiency judgment. The problem facing the mortgagee in these transactions is that the title may be encumbered by interests other than their own. As explained in FloRida Real PROPERTY Litigation § 5.61:
the mortgagee’s attorney must examine the abstract since the date of the mortgage to determine whether there are any junior encumbrances. If so, they will have to be satisfied. If it is not possible to get them satisfied, the mortgagee will have no choice but to foreclose to acquire a clear title.
Parties can agree to preserve the mortgagee’s lien and thus prevent it from merging with the acquired title. Thomas E. Baynes, Jr., Florida Mortgages § 8-2 (1999). Preserving the lien would preserve the mortgagee’s priority with respect to junior encumbrances.
Generally, competing interests in land have priority in the order in which they are created. Cain & Bultman, Inc., 409 So.2d at 117. The important caveat to this rule is that those acquiring rights later will have priority if they took without “notice of the first created rights.” F.J. Holmes Equip., Inc. v. Babcock Bldg. Supply, Inc., 553 So.2d 748, 750 (Fla. 5th DCA 1989). In pertinent part, Florida’s recording statute states:
(1) No conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law
[[Image here]]
(2) Grantees by quitclaim, heretofore or hereafter made, shall be deemed and *827 held to be bona fide purchasers without notice within the meaning of the recording acts.
§ 695.01, Fla. Stat. (2005). Thus, “successors to legal title take title subject to those equitable interests of which they have notice.” Kroitzsch v. Steele, 768 So.2d 514, 517 (Fla. 2d DCA 2000). Forms of notice include possession, actual notice, and constructive notice of publicly recorded matters. Cain & Bultman, Inc., 409 So.2d at 117. In particular, with regard to possession, the Second District court has said that “[ajctual possession ... when open, visible, and exclusive, will put upon inquiry those acquiring any title to or a lien upon the land so occupied to ascertain the nature of the rights the occupants really have in the premises.” Kroitzsch, 768 So.2d at 517. In this case, it is abundantly clear that, at the time they took the quitclaim deed, the buyers were aware of the Morris and Pate lease. Apart from Morris and Pate’s operation of a business on the property, the existence of the lease had been the basis for the Morris/Pate motion to intervene filed and served in this case, and the consequent order allowing intervention.
We agree that the Barzanos’ rights under the foreclosure judgment are distinct from their rights as titleholders. As judgment creditors, the Barzanos have no right of possession or title in the property; only “to have the property sold and the proceeds applied against the foreclosure judgment.” Bankers Trust Co., 849 So.2d at 1162. Because no foreclosure sale ever took place, the Gaglianos’ right to convey a leasehold interest in their property was never cut off. The rights the Barzanos acquired under the subsequent quitclaim deed were subject to the lease. In concluding otherwise, the trial court erred. This being so, the summary final judgment is reversed in its entirety and remanded for further proceedings consistent with this opinion.
REVERSED and REMANDED.
PLEUS, C.J., and ORFINGER, J., concur.

. "[I]t is well established that a quitclaim deed only conveys such title or interest as possessed by the grantor at the time of the making of the deed ... and 'one who accepts a quitclaim deed is conclusively presumed to have agreed to take the title subject to all risks as to defects and incumbrances [sic].' ” Florida E. Coast Ry. v. Patterson, 593 So.2d 575, 577 (Fla. 3d DCA 1992) (quoting St. Clair v. City Bank & Trust Co., 175 So.2d 791, 792 (Fla. 2d DCA 1965)) (citations omitted).

. Section 45.0315, Florida Statutes (2005) provides:
At any time before the later of the filing of a certificate of sale by the clerk of the court or the time specified in the judgment, order, or decree of foreclosure, the mortgagor or the holder of any subordinate interest may cure the mortgagor's indebtedness and prevent a foreclosure sale by paying the amount of moneys specified in the judgment, order, or decree of foreclosure, or if no judgment, order, or decree of foreclosure has been rendered, by tendering the performance due under the security agreement, including any amounts due because of the exercise of a right to accelerate, plus the reasonable expenses of proceeding to foreclosure incurred to the time of tender, including reasonable attorney’s fees of the creditor. Otherwise, there is no right of redemption.

. The redemption provision was amended in 1993. Before the amendment, the redemption rights of junior lienors ended when the final judgment of foreclosure was entered, and the redemption rights of the mortgagor ended when the clerk issued the certificate of title. Now, the redemption rights of all parties are cut off at the filing of the certificate of sale. Florida Real Property Litigation § 5.141.

. At the time John Stepp was decided, the state of the law was such that the mortgagor's right of redemption did not terminate until the sale was confirmed by the court, or if no objection, until the certificate of title was issued. John Stepp, 379 So.2d at 386.